**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

STEVE SMITH,

    *Plaintiff*,

CASE NO. 12-CV-14009

*v.*

DISTRICT JUDGE ROBERT H. CLELAND
MAGISTRATE JUDGE CHARLES BINDER

ADRAY, Registered Nurse; and
JOHN DOES 1-5,

    *Defendants*.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON**
**DEFENDANT ADRAY'S MOTION FOR SUMMARY JUDGMENT**
(Doc. 11)

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant Adray's motion

be **GRANTED** and that the John Doe Defendants be dismissed.

## II.   REPORT

### A.   Introduction

Plaintiff Steve Smith, a state prisoner, filed this *pro se* federal civil rights action under 42

U.S.C. § 1983, alleging that his Eighth Amendment right to not have his medical needs treated

with deliberate indifference was violated while he was incarcerated by the Michigan Department

of Corrections ("MDOC") at the Macomb Correctional Facility ("MRF"). Plaintiff alleges that on

May 6, 2011, he requested health care assistance "after experiencing pain in [his] penis, and blood

in his urine[.]" (Doc. 1 at 3.) Plaintiff was seen that day by Defendant Adray, R.N., "who stated

that she was going to place a catheter in my penis. Which Plaintiff clearly stated to RN Adray, No!

I don't want that done." (*Id.*) Plaintiff alleges that he was "taken down by the Health Care Officer, yard Sergeant, and three yard officer[s], and placed in handcuffs." (*Id.*) Plaintiff states that Defendant Adray, "against Plaintiff['s] demand not to place the catheter in his penis, went against Plaintiff's demand and pulled down his pains [sic] and under wears [sic] and placed the catheter in his penis which caused excruciating pain in his penis, legs, and back." (*Id.*)

On September 11, 2012, Plaintiff's motion to proceed without prepayment of fees and costs was granted by U.S. Magistrate Judge Steven Whalen, who also directed that the U.S. Marshal serve the complaint on all defendants. (Docs. 6, 7.) U.S. District Judge Robert H. Cleland entered an order referring all pretrial matters to the undersigned magistrate judge. (Doc. 9.)

On December 26, 2012, Defendant Adray filed the instant motion for summary judgment, contending that Plaintiff has not fully exhausted his administrative remedies and that Defendant Adray is entitled to qualified immunity. (Doc. 11.) Although Plaintiff was given notice and was asked to respond to the motion by January 28, 2013 (Doc. 12), to date no response has been filed, nor has any request for an extension of time to respond been filed. Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), the motion is ready for report and recommendation without oral argument.

### B.    Motion Standards

A motion for summary judgment will be granted under Rule 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-

movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

    **C.**    **Analysis and Conclusions**

1.    **Exhaustion of Administrative Remedies**

Defendant Adray asserts that she is entitled to summary judgment because Plaintiff failed to satisfy the exhaustion rule, which is a precondition to filing suit. Defendant has attached Plaintiff's grievances to her motion. (Doc. 11 at Ex. 3.)

a.    **Governing Law & Policies**

Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Suits "brought with respect to prison conditions" include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).

To exhaust a claim, a prisoner must proceed through all of the steps of a jail or prison's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.

The Supreme Court provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The *Jones* Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in

their complaint, holding instead that failure to exhaust is an affirmative defense that must be raised

by the defendant. *Id.* at 921. The Court further held that "[t]he level of detail necessary in a

grievance to comply with the grievance procedures will vary from system to system and claim to

claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper

exhaustion." *Jones,* 127 S. Ct. at 922-23.

The Michigan Department of Corrections provides prisoners with a grievance procedure

for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130

(eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow

prior to filing a complaint in court, and each step is accompanied by a time limit. First, within two

business days after becoming aware of a grievable issue, an inmate should attempt to verbally

resolve the dispute with those involved. MDOC PD 03.02.130(P). If such an attempt is impossible

or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD

03.02.130(v). The grievance policy provides the following instructions regarding the information

that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be
> limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where,
> why, how). Dates, times, places and names of all those involved in the issue being
> grieved are to be included.

MDOC PD 03.02.130(R).[1]

If the grievance is accepted, the prison staff is required to respond in writing to a Step I

grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). If the

inmate is not satisfied with the response, or does not receive a response within fifteen days, he then

---

[1]The MDOC grievance policy referred to by the Supreme Court in *Jones v. Bock* was the November 1, 2000, version, *see Jones*, 127 S. Ct. at 916, which did not require inmates to include in their grievances the dates, times, places and names of all those involved. The policy directive at issue here – the July 2007 version – clearly  requires this higher level of specificity.

must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the

inmate is dissatisfied with the response at Step II or does not receive a Step II response within

fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section.

MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process.

b.      Analysis

Proper exhaustion "includes compliance with a state agency's timeliness deadlines." *Siggers*

*v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011). Defendant Adray attaches grievance #MRF

110600729028E, wherein Plaintiff indicated that the date of the incident was May 6, 2011, and

"today's date" was June 14, 2011. (Doc. 11, Ex. 3 at 6.) On June 23, 2011, the grievance form was

returned to Plaintiff with a notation indicting that it was "being rejected because it is untimely."

(Doc. 11, Ex. 3 at 6-7; Doc. 1 at 3, 13.) Plaintiff does not dispute this fact; indeed, his complaint

admits that the Step I grievance was rejected as untimely. (Doc. 1 at 3.)

What happened at Step II is less clear. Plaintiff avers that on June 24, 2011, he requested

a Step II appeal form, that he received it on July 7, 2011, and that he submitted the completed form

on that day. (*Id*. at 6.) On July 22, 2011, Plaintiff received a Step II response indicating that "[t]his

issue has been submitted for investigation and is currently under review." (Doc. 11, Ex. 3 at 5.)

When the state forgives failure to comply with a procedural requirement, such as timeliness, and

reviews a grievance, courts will also forgive the procedural failure. *Reed-Bey v. Pramstaller*, 603

F.3d 322, 324-25 (6th Cir. 2010) (prison officials reviewed grievance despite procedural failing

to name those involved in the issue being grieved). It is arguable that the Step II response indicates

that the state declined to enforce its own procedural timeliness rule and, instead, reviewed the

issues raised in the grievance. However, at the next step, the state returned to enforcing its rules.

Plaintiff alleges that he attempted to file a Step III grievance, but was told on January 4,

2012, that one had not been received. (Doc. 1 at 14; Doc. 11, Ex. 3 at 3.) Plaintiff avers that on

January 19, 2012, he resubmitted the Step III grievance. (Doc. 1 at 6; Doc. 11, Ex. 3 at 9.)

Defendant's materials confirm that the Step III grievance was not received until after Plaintiff

alleges that he "resubmitted" it in January 2012. (Doc. 13, Ex. 3 at 3.) Ultimately, Plaintiff's Step

III grievance was rejected as untimely. (*Id.*) Thus, in the end, the state did not forgive Plaintiff's

procedural failures. Accordingly, I suggest that Plaintiff did not properly exhaust his claim. *See*

*Siggers, supra.* I therefore suggest that Plaintiff's claim could be dismissed on this ground.

### 2.    Deliberate Indifference Claim

Even if the court finds that Plaintiff satisfied the exhaustion requirement, I suggest that

Defendant's motion for summary judgment should be granted on the merits. The Supreme Court

held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), that the deliberate

indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction

of pain in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment to the

U.S. Constitution. The Court explained that "[i]n order to state a cognizable claim, a prisoner must

allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical

needs. It is only such indifference that can offend 'evolving standards of decency' in violation of

the Eighth Amendment." *Id.* at 106.

A violation of the Eighth Amendment can be "manifested by prison doctors and their

response to prisoner's needs or by prison guards in intentionally denying or delaying access to

medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104. The

inquiry is two-pronged, consisting of both an objective and a subjective element. *Farmer v.*

*Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Wilson v. Seiter*, 501 U.S.

294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). The objective inquiry asks whether the

deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298.

As the Supreme Court recognized in *Estelle*, differences in judgment between an inmate and prison medical personnel regarding appropriate medical treatment are insufficient to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*

In this case, Plaintiff alleges that he requested health care assistance "after experiencing pain in [his] penis, and blood in his urine" and Defendant Adray responded promptly to his request. (Doc. 1 at 3.) However, Plaintiff then disagreed with Defendant Adray's decision to catheterize him and he let Defendant Adray know that he did not want that done. (*Id.*) Plaintiff indicated that he was then "taken down" by the five John Doe officers and catheterized against his will. (*Id.*)[2]

I first note that the claim is unusual since deliberate indifference "generally involves the *failure* to provide medical care" not the providing of medical care. *Kramer v. Wilkinson*, 302 F. App'x 396, 400-01 (6th Cir. 2008) (emphasis in original). I further note that the Eighth

---

[2]I note that Plaintiff does not claim that the catheter was unsterile or had been previously used. *Compare Kozlowski v. United States*, No. 08-13880-BC, 2009 WL 612172, at *3 (E.D. Mich. Mar. 5, 2009) (finding that the plaintiff stated a deliberate indifference claim where he alleged that the catheters used were designed for a single use yet he was only issued one catheter per week instead of four catheters per day); with *Hicks v. Meko*, No. 0:09-01-HRW, 2009 WL 2043556, at *2 (E.D. Ky. July 13, 2009) (screening case and finding that the plaintiff failed to state a deliberate indifference claim where he "disagree[d] with his physicians regarding the frequency of replacing a catheter").

Amendment does not require prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment – indeed, as pointed out by the Seventh Circuit, such a standard "would be absurd." *Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir. 1996) ("Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations.").

I suggest that even assuming Plaintiff's allegations contained in the complaint are true, the allegations do not rise to the level of deliberate indifference needed to establish an Eighth Amendment claim. *See LeVine v. Roebuck*, 550 F.3d 684, 690 (8th Cir. 2008) (granting summary judgment on Eighth Amendment claim where the plaintiff alleged that defendants were brutal in attempting to catheterize him because his prostate was enlarged). I therefore suggest that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To the extent that Plaintiff is contending that his right to refuse medical treatment was violated, I suggest that this claim also fails. "[I]ndividuals in state custody enjoy [a] protectable liberty interest . . . to refuse medical treatment." *Noble v. Schmitt*, 87 F.3d 157, 161 (6th Cir. 1996). However, "that right is not absolute and is particularly susceptible to regulation in the prison setting." *Davis v. Agosto*, 89 F. App'x 523, 528 (6th Cir. 2004). In *Davis*, the prisoner had an open wound which the defendant sutured against the prisoner's will. The Sixth Circuit held that "it was well within the authority of the medical officials at the prison to determine that closing of the wound was necessary to the health and safety of Davis as well as those around him." *Id.* The court further noted that "[ha]d they opted not to provide the treatment, the officials could have subjected themselves to a deliberate-indifference claim" for the failure to treat initially and the other

complications that might arise from the failure to initially treat the wound. *Id.*[3] I suggest that the same is true in the instant case. Indeed, here, Plaintiff did file a deliberate indifference claim and had his urinary condition not been treated, he may well have had a valid claim based on a failure to initially catheterize and complications that may have arisen from that failure. I therefore suggest that there is no genuine dispute as to any material fact and Defendant Adray is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### 3.     Doe Defendants 1-5

Plaintiff alleges that the Doe Defendants 1-5 subdued him so that Defendant Adray could catheterize him against his will. (Doc. 1 at 3.) "In general, the use of unnamed defendants is not favored in the federal courts." *Haddad v. Fromson*, 154 F. Supp. 2d 1085, 1093 (W.D. Mich. 2001). Dismissal of Doe defendants is proper where a plaintiff fails to identify and serve any Doe defendants within the 120 days provided for in Rule 4(m). *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 345 (6th Cir. 2007) (declining to find constructive notice where the plaintiff never substituted real names for the Doe defendants); *Searcy v. County of Oakland,* 735 F. Supp. 2d 759, 771 (E.D. Mich. 2010) ("Rule 4(m) applies equally to the pseudonymous defendants.") Since more than 120 days have elapsed since the filing of the complaint and Defendant Does 1-5 have not been identified and served, I suggest that they be *sua sponte* dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

### 4.     Conclusion

---

[3]The court in *Davis* also held that to the extent the plaintiff argued the forced suturing violated the Eighth Amendment, that claim also failed. *Davis*, 89 F. App'x at 529.

10

For all the reasons stated above, I recommend that Defendant Adray's motion for summary judgment be granted and that the Doe Defendants 1-5 be *sua sponte* dismissed. I therefore suggest that the entire case be dismissed.

### III.    REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

 s/ Charles E. Binder

CHARLES E. BINDER

Dated: March 27, 2013                         United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System and served on the following non-ECF participant via the United States Postal System: Steve Smith #395426, St. Louis Correctional Facility, 8585 N. Croswell Road, St. Louis, MI 48880.

Date:  March 27, 2013                    By      s/Patricia T. Morris
                                                        Law Clerk to Magistrate Judge Binder

12